**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| JERAMIAH COLLINS<br>222 W. Liberty Street<br>Springfield, Ohio 45506, | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| SCHULER'S BAKERY, INC.<br>1911 South Limestone Street<br>Springfield, Ohio 45505 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>Schuler's Bakery, Inc.<br>c/o Trent A. Schuler<br>3380 Middle Urbana Road<br>Springfield, Ohio 45502 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Jeramiah Collins, by and through undersigned counsel, as his Complaint against Defendant Schuler's Bakery, states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Collins is a resident of the city of Springfield, Clark County, Ohio.

2. At all times herein, Collins was acting in the course and scope of his employment.

3. Schuler's Bakery is a domestic corporation that does business at 1911 South Limestone Street, Springfield, Clark County, Ohio 45505.

4. Schuler's Bakery is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Collins is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e.

6. All material events alleged in this Complaint occurred in Clark County, Ohio.

7. This Court has supplemental jurisdiction over Collins's state law claims pursuant to 28 U.S.C. § 1367 as Collins's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Collins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00731 against Schuler's Bakery ("Collins EEOC Charge").

10. Collins dually filed the Collins EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

11. On or about August 19, 2021, the EEOC issued a Notice of Right to Sue letter to Collins regarding the Charges of Discrimination brought by Collins against Schuler's Bakery in the Collins EEOC Charge.

12. Collins received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

13. Collins has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Collins has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. In or about August 2019, Collins began working for Schuler's Bakery.

16. Schuler's Bakery employed Collins as a donut maker.

17. At all times herein, Collins was qualified for the position of donut maker.

18. Collins is male.

19. Collins is in a romantic relationship with a man.

20. Collins is attracted to men.

21. In or about January 2020, Collins's coworkers learned about his sexual orientation.

22. On or about January 10, 2020, Collins's coworker, Tim (Last Name Unknown) called Collins a "pole smoker." ("Pole Smoker Comment")

23. "Pole smoker" is an offensive term for men who have sex with men.

24. "Pole smoker" is a reference to performing oral sex on a man.

25. Tim LNU made the Pole Smoker Comment because of Collins's sexual orientation.

26. Tim LNU made the Pole Smoker Comment because of Collins's gender.

27. Tim LNU made the Pole Smoker Comment because Collins did not conform to stereotypes of how men should behave.

28. On or about January 10, 2020, Collins reported the Pole Smoker Comment to Richard Rockwell.

29. Rockwell was Collins's supervisor.

30. Schuler's Bakery has a policy against harassment ("Harassment Policy").

31. Schuler's Bakery's Harassment Policy precludes retaliation against employees who complain about harassment.

32. Alternatively, retaliation against employees who complain about harassment is permitted by Schuler's Bakery.

33. Schuler's Bakery's Harassment Policy precludes intimidation against employees who complain about harassment.

34. Alternatively, intimidation against employees who complain about harassment is permitted by Schuler's Bakery.

35. Schuler's Bakery's Harassment Policy requires employees to report what they reasonably believe is a violation of the Harassment Policy.

36. Schuler's Bakery's Harassment Policy precludes retaliation against employees who report a violation of the Harassment Policy.

37. Alternatively, retaliation against employees who report a violation of the Harassment Policy is permitted by Schuler's Bakery.

38. Schuler's Bakery's Harassment Policy precludes intimidation against employees who report a violation of the Harassment Policy.

39. Alternatively, intimidation against employees who report a violation of the Harassment Policy is permitted by Schuler's Bakery.

40. The Pole Smoker Comment violates the Harassment Policy.

41. Schuler's Bakery has a policy to investigate reports of violations of its Harassment Policy.

42. An investigation should include interviewing the complainant.

43. An investigation should include interviewing the subject of the complaint.

44. An investigation should include interviewing the subject of the reported discrimination.

45. An investigation should include interviewing witnesses to the reported discrimination.

46. An investigation should include getting a written statement from the complainant.

47. An investigation should include getting a written statement from the subject of the complaint.

48. An investigation should include getting a written statement from the subject of the reported discrimination.

49. In response to Collins's report of The Pole Smoker Comment, Schuler's Bakery did not interview Collins.

50. In response to Collins's report of The Pole Smoker Comment, Schuler's Bakery did not interview Tim LNU.

51. In response to Collins's report of The Pole Smoker Comment, Schuler's Bakery did not interview witnesses.

52. In response to Collins's report of The Pole Smoker Comment, Schuler's Bakery did not get a written statement from Collins.

53. In response to Collins's report of The Pole Smoker Comment, Schuler's Bakery did not get a written statement from Tim LNU.

54. In response to Collins's report of The Pole Smoker Comment, Schuler's Bakery did not get a written statement from witnesses.

55. Schuler's Bakery did not investigate Collins's report of The Pole Smoker Comment.

56. Schuler's Bakery did not give Tim LNU a verbal warning as a result of The Pole Smoker Comment.

57. Schuler's Bakery did not give Tim LNU a written warning as a result of The Pole Smoker Comment.

58. Schuler's Bakery did not give Tim LNU a final warning as a result of The Pole Smoker Comment.

59. Schuler's Bakery did not give Tim LNU a suspension as a result of The Pole Smoker Comment.

60. Schuler's Bakery did not give Tim LNU a demotion as a result of The Pole Smoker Comment.

61. Schuler's Bakery did not terminate Tim LNU's employment as a result of The Pole Smoker Comment.

62. Schuler's Bakery did not discipline Tim LNU at all as a result of The Pole Smoker Comment.

63. In or about October 2020, Tim LNU called Collins a "fag." ("Fag Comment")

64. "Fag" is an offensive term for men who have sex with men.

65. Tim LNU called Collins a "fag" because of his sexual orientation.

66. Tim LNU called Collins a "fag" because of his gender.

67. Tim LNU called Collins a "fag" because he did not conform to stereotypes about how men should behave.

68. In or about October 2020, Collins reported to Rockwell that Tim LNU called him a "fag."

69. The Fag Comment was a violation of the Harassment Policy.

70. In response to Collins's report of The Fag Comment, Schuler's Bakery did not interview Collins.

71. In response to Collins's report of The Fag Comment, Schuler's Bakery did not interview Tim LNU.

72. In response to Collins's report of The Fag Comment, Schuler's Bakery did not interview witnesses.

73. In response to Collins's report of The Fag Comment, Schuler's Bakery did not get a written statement from Collins.

74. In response to Collins's report of The Fag Comment, Schuler's Bakery did not get a written statement from Tim LNU.

75. In response to Collins's report of The Fag Comment, Schuler's Bakery did not get a written statement from witnesses.

76. Schuler's Bakery did not investigate Collins's report of The Fag Comment.

77. Schuler's Bakery did not give Tim LNU a verbal warning as a result of The Fag Comment.

78. Schuler's Bakery did not give Tim LNU a written warning as a result of The Fag Comment.

79. Schuler's Bakery did not give Tim LNU a final warning as a result of The Fag Comment.

80. Schuler's Bakery did not give Tim LNU a suspension as a result of The Fag Comment.

81. Schuler's Bakery did not give Tim LNU a demotion as a result of The Fag Comment.

82. Schuler's Bakery did not terminate Tim LNU's employment as a result of The Fag Comment.

83. Schuler's Bakery did not discipline Tim LNU at all as a result of The Fag Comment.

84. On or about November 2, 2020, Tim LNU confronted Collins at work ("November 2 Incident").

85. In the November 2 Incident, Tim LNU approached Collins from behind and rammed a tray of donuts into Collins's back.

86. In the November 2 Incident, Tim LNU told Collins, "Stay out of my way, you fag!"

87. In the November 2 Incident, Tim LNU punched Collins in the face.

88. On or about November 2, 2020, Collins reported the November 2 Incident to Rockwell.

89. On or about November 2, 2020, Collins reported the November 2 Incident to Darren (Last Name Unknown), a human resources representative for Schuler's Bakery.

90. On or about November 2, 2020, Collins filed a police report about the November 2 Incident.

91. Tim LNU did the November 2 Incident because of Collins's sexual orientation.

92. Tim LNU did the November 2 Incident because of Collins's gender.

93. The November 2 Incident violates Schuler's Bakery's Harassment Policy.

94. Tim LNU did the November 2 Incident because Collins did not conform to stereotypes about how a man should behave.

95. In response to Collins's report of The November 2 Incident, Schuler's Bakery did not interview Collins.

96. In response to Collins's report of The November 2 Incident, Schuler's Bakery did not interview Tim LNU.

97. In response to Collins's report of The November 2 Incident, Schuler's Bakery did not interview witnesses.

98. In response to Collins's report of The November 2 Incident, Schuler's Bakery did not get a written statement from Collins.

99. In response to Collins's report of The November 2 Incident, Schuler's Bakery did not get a written statement from Tim LNU.

100. In response to Collins's report of The November 2 Incident, Schuler's Bakery did not get a written statement from witnesses.

101. Schuler's Bakery did not investigate Collins's report of The November 2 Incident.

102. Schuler's Bakery did not give Tim LNU a verbal warning as a result of The November 2 Incident.

103. Schuler's Bakery did not give Tim LNU a written warning as a result of The November 2 Incident.

104. Schuler's Bakery did not give Tim LNU a final warning as a result of The November 2 Incident.

105. Schuler's Bakery did not give Tim LNU a suspension as a result of The November 2 Incident.

106. Schuler's Bakery did not give Tim LNU a demotion as a result of The November 2 Incident.

107. Schuler's Bakery did not terminate Tim LNU's employment as a result of The November 2 Incident.

108. Schuler's Bakery did not discipline Tim LNU at all as a result of The November 2 Incident.

109. On or about November 5, 2020, Schuler's Bakery changed Collins's schedule ("Hour Cut").

110. As a result of the Hour Cut, Schuler's Bakery scheduled Collins to work fewer hours than he worked before the Hour Cut.

111. The Hour Cut was an adverse employment action.

112. The Hour Cut was an adverse action.

113. Schuler's Bakery gave Collins the Hour Cut intentionally.

114. Schuler's Bakery gave Collins the Hour Cut willfully.

115. Schuler's Bakery gave Collins the Hour Cut because of his sexual orientation.

116. Schuler's Bakery gave Collins the Hour Cut because of his gender.

117. Schuler's Bakery gave Collins the Hour Cut because he did not conform to stereotypes about how men should behave.

118. Schuler's Bakery gave Collins the Hour Cut in retaliation for his reports of harassment.

119. On or about November 5, 2020, Collins asked Darren LNU why Schuler's Bakery gave him the Hour Cut.

120. On or about November 5, 2020, Darren LNU told Collins that Schuler's Bakery gave him the Hour Cut to keep him separate from Tim LNU.

121. In or about November 2020, Schuler's Bakery did not change Tim LNU's hours.

122. On or about November 5, 2020, Schuler's Bakery gave Collins three disciplinary points ("Retaliatory Discipline").

123. Schuler's Bakery has a disciplinary point system in which employees are terminated if they accrue ten disciplinary points.

124. On or about November 5, 2020, Schuler's Bakery stated that the reason for the Retaliatory Discipline was that Collins came to his worksite to pick up his paycheck ("Stated Reason").

125. The Stated Reason was not a sufficient basis to justify the Retaliatory Discipline.

126. The Stated Reason was not the real reason for the Retaliatory Discipline.

127. The Stated Reason was pretextual.

128. Schuler's Bakery did not give other employees disciplinary points for coming to their worksite to pick up a paycheck.

129. The Retaliatory Discipline was an adverse employment action.

130. The Retaliatory Discipline was an adverse action.

131. Schuler's Bakery gave Collins the Retaliatory Discipline intentionally.

132. Schuler's Bakery gave Collins the Retaliatory Discipline willfully.

133. Schuler's Bakery gave Collins the Retaliatory Discipline because of his sexual orientation.

134. Schuler's Bakery gave Collins the Retaliatory Discipline because of his gender.

135. Schuler's Bakery gave Collins the Retaliatory Discipline because he did not conform to stereotypes about how men should behave.

136. Schuler's Bakery gave Collins the Retaliatory Discipline in retaliation for his reports of harassment.

137. On or about November 6, 2020, Tim LNU told Marcelles Blackwell that he would attack Collins again if given the chance ("Remorseless Remark").

138. Blackwell was a donut maker for Schuler's Bakery.

139. On or about November 6, 2020, Blackwell told Collins about the Remorseless Remark.

140. On or about November 6, 2020, Collins reported the Remorseless Remark to Rockwell ("Report of the Remorseless Remark").

141. In response to the Report of the Remorseless Remark, Rockwell laughed.

142. In response to the Report of the Remorseless Remark, Rockwell replied, "Hearsay! Let this all go."

143. The Federal Rules of Evidence do not apply in Schuler's Bakery's investigations of threats of violence.

144. The Ohio Rules of Evidence do not apply in Schuler's Bakery's investigations of threats of violence.

145. In the alternative, Schuler's Bakery only investigates threats of violence if the report would be admissible in court.

146. In response to Collins's Report of the Remorseless Remark, Schuler's Bakery did not interview Collins.

147. In response to Collins's Report of the Remorseless Remark, Schuler's Bakery did not interview Tim LNU.

148. In response to Collins's Report of the Remorseless Remark, Schuler's Bakery did not interview Blackwell.

149. In response to Collins's Report of the Remorseless Remark, Schuler's Bakery did not interview witnesses.

150. In response to Collins's Report of the Remorseless Remark, Schuler's Bakery did not get a written statement from Collins.

151. In response to Collins's Report of the Remorseless Remark, Schuler's Bakery did not get a written statement from Tim LNU.

152. In response to Collins's Report of the Remorseless Remark, Schuler's Bakery did not get a written statement from witnesses.

153. Schuler's Bakery did not investigate Collins's Report of the Remorseless Remark.

154. Schuler's Bakery did not give Tim LNU a verbal warning as a result of The Remorseless Remark.

155. Schuler's Bakery did not give Tim LNU a written warning as a result of The Remorseless Remark.

156. Schuler's Bakery did not give Tim LNU a final warning as a result of The Remorseless Remark.

157. Schuler's Bakery did not give Tim LNU a suspension as a result of The Remorseless Remark.

158. Schuler's Bakery did not give Tim LNU a demotion as a result of The Remorseless Remark.

159. Schuler's Bakery did not terminate Tim LNU's employment as a result of The Remorseless Remark.

160. Schuler's Bakery did not discipline Tim LNU at all as a result of The Remorseless Remark.

161. Schuler's Bakery knowingly took an adverse employment action against Collins.

162. Schuler's Bakery knowingly took an adverse action against Collins.

163. Schuler's Bakery intentionally took an adverse employment action against Collins.

164. Schuler's Bakery intentionally took an adverse action against Collins.

165. Schuler's Bakery willfully took an adverse employment action against Collins.

166. Schuler's Bakery willfully took an adverse action against Collins.

167. On or about November 20, 2020, Collins believed that his termination was imminent.

168. On or about November 20, 2020, a reasonable person in Collins's position would have felt compelled to resign.

169. On or about November 20, 2020, Schuler's Bakery constructively discharged Collins.

170. On or about November 20, 2020, Schuler's Bakery constructively discharged Collins because of his sexual orientation.

171. On or about November 20, 2020, Schuler's Bakery constructively discharged Collins because of his gender.

172. On or about November 20, 2020, Schuler's Bakery constructively discharged Collins because he did not conform to stereotypes about how men should behave.

173. On or about November 20, 2020, Schuler's Bakery constructively discharged Collins in retaliation for his reports of harassment.

174. On or about January 4, 2021, Collins, through counsel, sent a letter to Schuler's Bakery, alleging sexual orientation discrimination and retaliation ("Notice of Claims").

175. In the Notice of Claims, Collins opposed sexual orientation discrimination and retaliation.

176. On or about January 29, 2021, Schuler's Bakery, through counsel, sent a response to the Notice of Claims ("NOC Response").

177. In the NOC Response, Schuler's Bakery, through counsel, wrote in bold font, "**Your client's allegation that he is gay is suspect.**"

178. Schuler's Bakery is not in a position to know Collins's sexual orientation better than he knows his own sexual orientation.

179. In the NOC Response, Schuler's Bakery alleged that Schuler's Bakery believed Collins is lying about being gay because he "had a child with an ex-girlfriend."

180. It is common for gay men to have ex-girlfriends.

181. It is common for gay men to have children.

182. It is offensive for an employer to suggest that a former employee is lying about his sexual orientation.

183. It is offensive for an employer to suggest that the employer knows a former employee's sexual orientation better than he knows his own sexual orientation.

184. Schuler's Bakery knew that the accusations in the NOC Response were offensive.

185. Schuler's Bakery made the accusations in the NOC Response in order to cause Collins emotional distress.

186. The accusations in the NOC Response caused Collins emotional distress.

187. Schuler's Bakery made the accusations in the NOC Response in retaliation for his opposition to discrimination and retaliation.

188. As a direct and proximate result of Schuler's Bakery's conduct, Collins suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: GENDER & SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF TITLE VII

189. Collins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

190. Schuler's Bakery treated Collins differently than other similarly-situated employees based on his gender.

191. Schuler's Bakery treated Collins differently than other similarly-situated employees based on his sexual orientation.

192. Schuler's Bakery treated Collins differently than other similarly-situated employees because he did not conform to stereotypes about how men should behave.

193. During Collins's employment Tim LNU harassed Collins based on his gender and/or sexual orientation.

194. Collins informed Schuler's Bakery about the harassment he was facing.

195. Schuler's Bakery did not take reasonable action to remedy the harassment Collins was facing.

196. Schuler's Bakery constructively discharged Collins based on his gender.

197. Schuler's Bakery constructively discharged Collins based on his sexual orientation.

198. Schuler's Bakery constructively discharged Collins because he did not conform to stereotypes about how men should behave.

199. As a direct and proximate result of Schuler's Bakery's conduct, Collins suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: GENDER & SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

200. Collins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

201. Schuler's Bakery treated Collins differently than other similarly-situated employees based on his gender.

202. Schuler's Bakery treated Collins differently than other similarly-situated employees based on his sexual orientation.

203. Schuler's Bakery treated Collins differently than other similarly-situated employees because he did not conform to stereotypes about how men should behave.

204. During Collins's employment Tim LNU harassed Collins based on his gender and/or sexual orientation.

205. Collins informed Schuler's Bakery about the harassment he was facing.

206. Schuler's Bakery did not take reasonable action to remedy the harassment Collins was facing.

207. Schuler's Bakery constructively discharged Collins based on his gender.

208. Schuler's Bakery constructively discharged Collins based on his sexual orientation.

209. Schuler's Bakery constructively discharged Collins because he did not conform to stereotypes about how men should behave.

210. As a direct and proximate result of Schuler's Bakery's conduct, Collins suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII

211. Collins restates each and every prior paragraph of this complaint, as if it were fully restated herein.

212. As a result of Schuler's Bakery's discriminatory conduct described above, Collins complained about the harassment he was experiencing.

213. Subsequent to Collins's reporting of harassment, Schuler's Bakery cut Collins's hours.

214. Subsequent to Collins's reporting of harassment, Schuler's Bakery gave Collins three disciplinary points.

215. Subsequent to Collins's reporting of harassment, Schuler's Bakery accused Collins of lying about his sexual orientation.

216. Schuler's Bakery's actions were retaliatory in nature based on Collins's opposition to the unlawful discriminatory conduct.

217. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing discrimination.

218. As a direct and proximate result of Schuler's Bakery's conduct, Collins suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

219. Collins restates each and every prior paragraph of this complaint, as if it were fully restated herein.

220. As a result of Schuler's Bakery's discriminatory conduct described above, Collins complained about the harassment he was experiencing.

221. Subsequent to Collins's reporting of harassment, Schuler's Bakery cut Collins's hours.

222. Subsequent to Collins's reporting of harassment, Schuler's Bakery gave Collins three disciplinary points.

223. Subsequent to Collins's reporting of harassment, Schuler's Bakery accused Collins of lying about his sexual orientation.

224. Schuler's Bakery's actions were retaliatory in nature based on Collins's opposition to the unlawful discriminatory conduct.

225. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice to retaliate against an employee for opposing discrimination.

226. As a direct and proximate result of Schuler's Bakery's conduct, Collins suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Collins respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Schuler's Bakery to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Schuler's Bakery to restore Collins to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Collins for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Collins claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

                                               Respectfully submitted,

                                               */s/ Trisha Breedlove*_____
                                               Trisha Breedlove (0095852)
                                               Paul Filippelli (0097085)
                                               **THE SPITZ LAW FIRM, LLC**
                                               1103 Schrock Road, Suite 307
                                               Columbus, Ohio 43229
                                               Phone: (216) 291-4744
                                               Fax:    (216) 291-5744
                                               Email: trisha.breedlove@spitzlawfirm.com
                                               Email: paul.filippelli@spitzlawfirm.com
                                               *Attorneys for Plaintiff Jeramiah Collins*

## JURY DEMAND

Plaintiff Collins demands a trial by jury by the maximum number of jurors permitted.

                                             */s/ Trisha Breedlove*_____
                                             Trisha Breedlove (0095852)
                                             Paul Filippelli (0097085)